UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Number: |
| v. | : | |
| | : | Magistrate Number: |
| RHODA GOODWIN, | : | |
| | : | VIOLATION: 18 U.S.C. §§ 371 & 1343 |
| Defendant. | : | (Conspiracy to Commit Wire Fraud) |
| _____ | : | |

## INFORMATION

The United States informs the Court that:

### COUNT ONE

### Introduction

At all times material to this information:

1. Defendant RHODA GOODWIN, resided within the State of Maryland. Beginning in or about June 2002, continuing until in or about May 2003, GOODWIN was employed as an in-house accountant at Career College Association ("CCA"), a business enterprise located in the District of Columbia.

2. Between in or about June 2003, until in or about June 2004, GOODWIN was employed as an accountant at Watergate Dental Associates ("WDA"), a business enterprise located and operated in the District of Columbia.

3. GOODWIN had access to Microsoft Network ("MSN"), an internet service provider in her Maryland residence. She was also authorized to access internet at CCA and WDA located in the District of Columbia.

4.	Co-conspirator RITA DUNCAN also resided in the State of Maryland. Between in or about April 2002 and in or about April 2003, DUNCAN was an applicant for employment with, or was employed as assistant to the office manager and office manager by Vision and Conceptual Development Center ("VCDC"), a business enterprise operated in the District of Columbia.

5.	From in or about October 2003 through in or about February 2004, DUNCAN was employed as an office manager by the Center for Physical and Massage Therapy ("CPMT"), a business enterprise located in the District of Columbia.

6.	DUNCAN had access to America On-Line ("AOL"), an internet service provider in her Maryland residence and was authorized to access the Internet at VCDC and CPMT, both located within the District of Columbia.

7.	GOODWIN and DUNCAN became acquainted while serving time in federal prison in 2001 for unrelated crimes of fraud.

### The Conspiracy

8.	From in or about April 2002 through February 2004, in the District of Columbia and elsewhere, GOODWIN did unlawfully, willfully, and knowingly combine, conspire, confederate, and agree with DUNCAN to commit wire fraud, that is, to devise a scheme and artifice to defraud prospective employers and thereby obtain money and property by means of false and fraudulent pretenses, representations and promises.

### The Goal of the Conspiracy

9.	It was the goal of the conspiracy that GOODWIN and DUNCAN would unjustly enrich themselves by using falsified writings including, letters and resumes, to obtain

employment and thereby gain access to financial accounts of their employers so that they could misappropriate money from those employers.

### Overt Acts

10. In furtherance of the conspiracy and to effect the objects thereof, GOODWIN and DUNCAN committed the following overt act, among others in the District of Columbia and elsewhere:

    a. On or about April 2002 and October 2003, respectively, DUNCAN obtained employment at both VCDC and CPMT by means of false and misleading employment applications, including, but not limited to, false claims relating to her employment, history, references, and education. Specifically, DUNCAN submitted to VCDC and CPMT via email from her home computer, a resume that contained, among other false representations, the name of GOODWIN as a job reference.

    b. On or about April 2002, DUNCAN sent by interstate wire - the internet - a copy of the fictitious resume to GOODWIN for her perusal. GOODWIN reviewed the resume and, upon being contacted by telephone by both VCDC and CPMT for a reference, praised DUNCAN's work ethic and loyalty to her employers. GOODWIN lied about DUNCAN'S work history and intentionally did not disclose the fact that she met DUNCAN in prison while serving time for fraud.

    c. On or about April 2002 and October 2003, after submitting these employment applications, as a result, in part, of GOODWIN'S efforts, DUNCAN began employment with VCDC and later with CPMT. Once employed by these organizations, DUNCAN submitted applications – by phone and by Internet – in the names of her employer to credit card companies,

including American Express and Capitol One Bank, falsely representing that her employers were seeking credit cards and/or designated her as an authorized user of the cards. DUNCAN then used the credit cards obtained in the name of her employers to purchase goods and services, including, but not limited to a car, airline tickets, personal internet service, cellular phone service, and clothing, when she well knew that these purchases were not authorized. On at least one occasion, DUNCAN purchased airline tickets for both herself and GOODWIN to travel to Dallas. DUNCAN's conduct caused loss to VCDC of an amount exceeding $30,000.

      d. On or about June 2003, GOODWIN obtained employment at WDA by means of a false and misleading employment application, including, but not limited to, false claims relating to her employment, history, references, and education. The resume submitted to WDA by GOODWIN also contained the name of DUNCAN as a job reference from a company called "Accu-Tech Mechanical."

      e. On or about June 2003, GOODWIN provided a copy of the fictitious resume to DUNCAN for her perusal. DUNCAN reviewed the resume and, upon being contacted by WDA for a reference, stated that she worked with GOODWIN for 18 months and found her to be hard working, highly ethical and loyal to her employer. She also stated that GOODWIN's work product was always timely and accurate

      f. On or about June 2003, GOODWIN was hired and began employment with WDA. Once employed by WDA, GOODWIN began writing checks to herself on WDA's account and endorsing those checks with Dr. Gluck's signature stamp. GOODWIN cashed the checks and used the money to purchase goods and services, including, but not limited to a clothing, airline tickets, hotel accommodations, jewelry and other luxury items, when she well

4

knew that these purchases were not authorized.  GOODWIN further falsified WDA's accounting records to avoid detection of the scheme.  As a result of this scheme, GOODWIN misappropriated in excess of $195,000.

(Conspiracy to Commit Wire Fraud, in violation of 18 U.S. Code, Sections 371, 1343)

        RESPECTFULLY SUBMITTED,

        KENNETH L. WAINSTEIN
        UNITED STATES ATTORNEY
        D.C. Bar No. 451-058

By: _____
        ANTHONY M. ALEXIS
        D.C. Bar Number 384-545
        202-514-9416
        MICHELLE MEROLA
        D.C. Bar Number 451-413
        (202) 353-4862
        Assistant United States Attorneys
        555 Fourth Street, N.W.,
        Room 5239
        Washington, D.C.  20530