UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA



FILED
JUN 2 1 2005
NANCY MAYER WHITTINGTON, CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Number: CR:05-0182-RCL |
| v. | : | Magistrate Number: |
| RHODA GOODWIN, | : | VIOLATION: 18 U.S.C. §§ 371 & 1343 (Conspiracy to Commit Wire Fraud) |
| Defendant. | : | |

Let This be filed
Royce C. Lamberth
U.S.D.J. 6/21/05

### STATEMENT OF THE OFFENSE

In or about 2001, defendant RHODA GOODWIN, and Rita Duncan also known as Rita Farrell, were both incarcerated at Federal Prison Camp, Alderson, West Virginia (FPC-Alderson) for crimes related to fraud. While at FPC-Alderson, the two women became acquainted. In July, 2001, defendant RHODA GOODWIN was released from FPC-Alderson and moved to the District of Columbia, Metropolitan area, ultimately residing at 7315 Rotunda Court, Clinton, Maryland. Rita Duncan was sent to a halfway house and ultimately released from prison in early 2002. Upon release from prison, defendant RHODA GOODWIN and Rita Duncan were in contact. Soon thereafter, both defendant RHODA GOODWIN and Rita Duncan began to look for employment.

In early 2002, defendant RHODA GOODWIN and Rita Duncan agreed to unjustly enrich themselves by using falsified writings including, letters and resumes, to obtain employment and thereby gain access to the financial accounts of their employers so that they could misappropriate money from their employers' accounts.

In early 2002, defendant RHODA GOODWIN and Rita Duncan entered into an agreement whereby they would list each other as references on their respective job applications

and would utilize the interstate wires, the internet and/or facsimile machines to communicate, falsely, to prospective employers that they had worked with each other at various former employers and would provide false positive employment performance evaluations to the prospective employers to encourage prospective employers to hire each other. It was agreed and understood that defendant RHODA GOODWIN and Rita Duncan would contact each other by wire or internet to alert each other when a prospective employer was about to call to verify references listed on a resume or job application. In turn, it was agreed and understood that defendant RHODA GOODWIN and Rita Duncan would notify each other when they had been contacted by a prospective employer and would communicate to each other what false information she had informed the prospective employer. Once they were hired, it was known and agreed by both defendant RHODA GOODWIN and Rita Duncan that they would use their positions to obtain property from their employers and would convert the property to their own personal use.

    A.    <u>Rhoda Goodwin Employment</u>

In or about May 2002, defendant RHODA GOODWIN submitted a resume to Career College Association (CCA) seeking a job as an in-house accountant. On or about June 6, 2002 defendant RHODA GOODWIN sent by way of interstate wire, that is, the internet, between Maryland and the District of Columbia from her home to CCA, a list of references that included Rita Duncan. Rita Duncan was listed as being able to provide a reference for defendant RHODA GOODWIN for her employment at a company known as PADCO, Inc. Defendant RHODA GOODWIN knew full well that this was false because Rita Duncan had not worked at PADCO with her, and defendant RHODA GOODWIN could not obtain a positive reference from PADCO because she had been incarcerated for stealing from PADCO.

On or about June 6, 2002, Rita Duncan represented falsely that she had worked with defendant RHODA GOODWIN at PADCO and that she was a good employee and that she was good at accounts. Rita Duncan then used the interstate wires to telephone defendant RHODA GOODWIN from Washington, D.C. to Maryland and communicated what she had told CCA about defendant RHODA GOODWIN. Soon thereafter defendant RHODA GOODWIN was hired by CCA and committed thefts at CCA that caused the loss of at least $40,997 to CCA. Defendant RHODA GOODWIN was terminated from CCA due to her thefts.

In or about June 2003, after her termination from CCA, defendant RHODA GOODWIN was employed as an accountant at Watergate Dental Associates ("WDA"), a professional corporation located and operated in the District of Columbia that provides dental services. At all times relevant to this matter, WDA was under the direction of Thomas Gluck, D.M.D. (Dr. Gluck). Defendant RHODA GOODWIN worked at WDA until June 2004, at which time she resigned when an investigation was initiated into defendant RHODA GOODWIN and several incidents of questionable bookkeeping.

As part of her initial scheme and agreement with Rita Duncan, defendant RHODA GOODWIN obtained employment at WDA as an accounting assistant by means of interstate wire, telephone and internet to forward her resume to WDA and by means of a false and misleading employment application, including, but not limited to, false claims relating to her employment, history, employment references, and education. On or about June 12, 2003, defendant RHODA GOODWIN aided and abetted by Rita Duncan sent a resume to Matchstar.com which was transmitted by means of wire communications in interstate commerce from Matchstar.com in Maryland and California to the District of Columbia. The resume submitted to WDA by defendant RHODA GOODWIN specifically listed Rita Duncan as a job

reference from a company called "Accu-Tech Mechanical." Defendant RHODA GOODWIN knew that this reference was false because Rita Duncan had not worked with her at Accu-Tech Mechanical. Further, Rita Duncan agreed as part of the scheme to provide a false reference for defendant RHODA GOODWIN when she was contacted by WDA.

Thereafter, defendant RHODA GOODWIN provided a copy of the fictitious resume to Rita Duncan for her perusal. Rita Duncan reviewed the resume and, upon being contacted by WDA for a reference, stated that she worked with defendant RHODA GOODWIN for 18 months and found her to be hard working, highly ethical and loyal to her employer. Rita Duncan knew the information was false and knew that if defendant RHODA GOODWIN was hired by WDA that she would be working with WDA's accounts and would steal money from WDA.

As a direct result of the false representations made by Rita Duncan as had been agreed, defendant RHODA GOODWIN began employment with WDA as an accounting assistant. As part of her responsibilities defendant RHODA GOODWIN had access to WDA's checks and accounting ledger that tracked which checks has been written on behalf of WDA and for what purpose the checks had been written. Once employed by WDA, defendant RHODA GOODWIN began converting money and property belonging to WDA by writing checks to herself on WDA's account and endorsing those checks with either Dr. Gluck's signature stamp or by otherwise forging the endorsement on the checks. Defendant RHODA GOODWIN either cashed the checks or deposited them directly into accounts that she controlled and ultimately used the money to purchase goods and services, including, but not limited to a clothing, airline tickets, hotel accommodations, jewelry and other luxury items, when she well knew that these purchases were not authorized by anybody at WDA. Defendant RHODA GOODWIN further prevented her scheme from being detected by falsifying WDA's accounting records to reflect that the

checks had been written to legitimate vendors of WDA. As a result of this scheme, defendant RHODA GOODWIN embezzled, stole, and converted in excess of $195,000 of funds that belonged to WDA from its Riggs Bank account.

      B.    Rita Duncan Employment

As part of their scheme and agreement, in or about April 2002, after Rita Duncan was released from federal prison and moved to the District of Columbia area, Rita Duncan applied for employment, and was thereafter hired by Vision and Conceptual Development Center ("VCDC"), a business enterprise operated in the District of Columbia by Dr. Harry Wachs. VCDC employed Rita Duncan as an assistant to the office manager at a salary exceeding $40,000 and, later, promoted her to the position of office manager. Rita Duncan worked at VCDC until in or about April 2003, when she was terminated for stealing from VCDC.

In or about October 2003, after her termination from VCDC, Rita Duncan secured employment as an office manager with the Center for Physical and Massage Therapy ("CPMT"), a business operated in the District of Columbia where she worked until February 2004.

As part of the scheme, Rita Duncan obtained employment at both VCDC and CPMT by means of false and misleading employment applications, including, but not limited to, false claims relating to her employment, history, references, and education. Specifically, Rita Duncan submitted to VCDC and CPMT, a resume that contained, among other false representations, the name of the defendant as a job reference. Thereafter, Rita Duncan provided a copy of the fictitious resume to defendant RHODA GOODWIN for her perusal. Defendant RHODA GOODWIN reviewed the resume and, upon being contacted by both VCDC and CPMT for a reference, praised Rita Duncan's work ethic and loyalty to her employers. Defendant RHODA GOODWIN lied about Rita Duncan's work history and intentionally did not disclose the fact

5

that she met Rita Duncan in prison while serving time for credit card fraud. Defendant RHODA GOODWIN made these representations knowing them to be untrue and knowing that a truthful statement would prevent Rita Goodwin's employment with VCDC and CPMT and, thereby, frustrate the scheme to misappropriate monies from these employers. Moreover, defendant RHODA GOODWIN understood that, in exchange for her conduct, Rita Duncan would provide similar false references in her attempts to seek future employment. Defendant RHODA GOODWIN also understood that she would share in the proceeds of Rita Duncan's criminal scheme and would receive financial benefits, such as airline tickets, directly from Rita Duncan in the event that the scheme to obtain employment was successful.

After submitting these employment applications, as a result, in part, of defendant RHODA GOODWIN's efforts, Rita Duncan began employment with VCDC and later with CPMT. On at least one occasion, Rita Duncan purchased airline tickets for both herself and defendant RHODA GOODWIN to travel to Texas. Rita Duncan later notified defendant RHODA GOODWIN that she was terminated by VCDC due to allegations that she embezzled money from the company. Upon information and belief, Rita Duncan accrued charges in excess of $50,000.

I have read each of the 6 pages constituting this statement of offense, I have reviewed the statement of offense with my lawyer, and I adopt the statement of offense as the facts that would have been proven in this case.

Date: 6/21/05

_____
RHODA GOODWIN
Defendant

I have read each of the 6 pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 6/21/05

_____
JENIFER WICKS, ESQUIRE
Attorney for the Defendant